CLERK'S OFFICE
A TRUE COPY
Feb 14, 2023
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Johnny VANG's Apple iPhone assigned call number (414)
439-7856, currently in the possession of the U.S. Dept. of
Homeland Security Investigations (See Attachments)

)
)
)
)
)
)

Case No.  23    MJ    29

**Matter No.: 2021R00114**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 42, 371, 545 | conspiracy; unlawful importation,  sale, receipt, acquisition or purchase of certain |
| 16 U.S.C. §§ 3372, et seq. | animals; submission of false records regarding same |

The application is based on these facts:

See the attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

SA Logan Cannon, USFWS
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means).*

Date:    2/14/2023

*Judge's signature*

City and state:    Milwaukee, WI

Hon. William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR
A SEARCH AND SEIZURE WARRANT**

I, Logan Cannon, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the United States Fish and Wildlife Service (USFWS) Office of Law Enforcement (OLE) currently assigned to the USFWS OLE Madison, Wisconsin Resident Agent in Charge Office.  I have served as a federal law enforcement officer for approximately 12 years; six years as a USFWS Special Agent and six years as a uniformed Federal Wildlife Officer (FWO) for the USFWS National Wildlife Refuge System.  I am a graduate of the Criminal Investigator Training Program and the USFWS Special Agent Basic School at the Federal Law Enforcement Training Center in Glynco, Georgia.    I have a Bachelor of Science degree in Wildlife Ecology and Management with a minor in Environmental Law Enforcement from the University of Wisconsin – Stevens Point.

2.      My training and experience have made me familiar with the laws, regulations, and Treaties enforced by the USFWS, including but not limited to the Lacey Act and the various federal regulations pertaining to the importation of fish, wildlife, or parts thereof into the United States.  I am also familiar with the federal regulations pertaining to the importation of injurious species (i.e. snakeheads) into the United States.  Based on my training and experience, I know that any live fish or viable eggs of snakehead fishes of the genera *Channa* and *Parachanna* of the Family Channidae, including but not limited to Giant snakehead (*Channa micropeltes*) are prohibited from being imported into the United States.  I also know from my training and experience that a USFWS import/export license is required if a person is engaged in business of importing or exporting wildlife (including fish) for commercial purposes and that any fish, wildlife, or parts thereof must be declared to the USFWS upon import into the United States.  Based on my training, experience,

and information provided to me by other agents I know that people who import illegal fish, wildlife, or parts thereof into the United States may fail to declare, falsely label or identify, or submit a false record for the fish, wildlife, or parts thereof to avoid detection by law enforcement at the port of entry.

3.     I have been involved in numerous federal investigations, either as the case agent/officer or in various support roles, including investigations involving the unlawful take, import, transport, possession, and sale of fish and wildlife.  I have planned, conducted, and participated in the execution of search warrants of residences, businesses, persons, and social media accounts.  I have participated in investigations that involved the seizure of computers, cellular telephones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these computers, cellular telephones, cameras, and other digital storage devices.  Based on my training, experience, and information provided to me by other law enforcement officers, I know this electronic data can provide evidence of the crimes being investigated and corroborate information already known or suspected by law enforcement.

4.     Through my training and experience, I know that criminals use computers, mobile devices, and the internet to facilitate their crimes with others.  I also know that criminals create, store, and use electronic data over internet-based applications such as Facebook and Facebook Messenger.  Additionally, I know that the Facebook Messenger application allows users to have multiple accounts.  This feature could allow criminals to switch between accounts as needed to avoid detection by law enforcement. I also know that the Facebook Messenger application can be utilized on both traditional computers and modern smartphones.

5.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses.  This

affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that JOHNNY CHILENG VANG dba VANG AQUATIC LIFE LLC, and others, known and unknown, have committed and are committing violations of the following federal criminal laws; 18 U.S.C. § 545 (Smuggling), 18 U.S.C. § 371 (Conspiracy), 18 U.S.C. § 42(a)(1) (Lacey Act – Injurious Species), 16 U.S.C. § 3372(a)(1) (Lacey Act), 16 U.S.C. § 3372(a)(2)(A) (Lacey Act), 16 U.S.C. § 3372(d)(1) (Lacey Act), 16 U.S.C. § 3372(d)(2) (Lacey Act), and 50 CFR § 16.13(a)(2)(iv) (Regulations for Injurious Species).  There is also probable cause to search the locations described in Attachment A for evidence, instrumentalities, contraband, or fruits of these crimes, as described in Attachment B.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

7.     The property to be searched includes Johnny VANG's cellular telephone, an Apple iPhone assigned call number (414) 439-7856, hereinafter referred to as "DEVICE A". DEVICE A is currently in the possession of the United States Department of Homeland Security Investigations in the Eastern District of Wisconsin.

8.     The applied for warrant would authorize the forensic examination of DEVICE A for the purpose of identifying electronically stored data particularly described in Attachment B.

## RELEVANT LAWS, REGULATIONS, AND BIOLOGICAL INFORMATION

9.     18 U.S.C. § 545 provides that whoever fraudulently or knowingly imports or brings into the United States, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after

3

importation, knowing the same to have been imported or brought into the United States contrary to law shall be fined under this title or imprisoned not more than 20 years, or both.

10.     18 U.S.C. § 371 sets forth that if two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

11.     The Lacey Act, 18 U.S.C. § 42(a)(1), prohibits the importation into the United States, any territory of the United States, the District of Columbia, the Commonwealth of Puerto Rico, or any possession of the United States, or any shipment between the continental United States, the District of Columbia, Hawaii, the Commonwealth of Puerto Rico, or any possession of the United States,  species of wild mammals, wild birds, fish (including mollusks and crustacea), amphibians, reptiles, brown tree snakes, or the offspring or eggs of any of the foregoing which the Secretary of the Interior may prescribe by regulation to be injurious to human beings, to the interests of agriculture, horticulture, forestry, or to wildlife or the wildlife resources of the United States.

    a.  18 U.S.C. § 42(a)(2) defines the term "wild" as any creature that, whether or not raised in captivity, normally are found in a wild state; and the terms "wildlife" and "wildlife resources" include those resources that comprise wild mammals, wild birds, fish (including mollusks and crustacea), and all other classes of wild creatures whatsoever, and all types of aquatic and land vegetation upon which such wildlife resources are dependent.

    b.  The regulations found in 50 CFR Part 16 implement the Lacey Act (18 U.S.C. § 42).   50 CFR § 16.13(a)(2)(iv) prohibits the importation, transportation, or

4

acquisition of any live fish or viable eggs of snakehead fishes of the genera *Channa* and *Parachanna* of the Family Channidae, including but not limited to: *Channa micropeltes* (giant, red, or redline snakehead).

12. The Lacey Act, 16 U.S.C. § 3372(a)(1), also makes it unlawful for any person to import, export, transport, sell, receive, acquire, or purchase any fish or wildlife or plant taken, possessed, transported, or sold in violation of any law, treaty, or regulation of the United States or in violation of any Indian tribal law.

13. The Lacey Act, 16 U.S.C. §3372(a)(2)(A), additionally makes it unlawful for any person to import, export, transport, sell, receive, acquire, or purchase in interstate or foreign commerce any fish or wildlife taken, possessed, transported, or sold in violation of any law or regulation of any State or in violation of any foreign law.

    a. Wisconsin Administrative Code, Natural Resources Chapter 40.04(3) states that no person may transport, possess, transfer, or introduce a prohibited invasive species identified or listed under sub. (2).

    b. Wisconsin Administrative Code, Natural Resources Chapter 40.04(2)(c)1 lists *Channidae* (snakehead), among other things, as a prohibited invasive fish species in Wisconsin.

14. The Lacey Act, 16 U.S.C. § 3372(d)(1), further states it is unlawful for any person to make or submit any false record, account, or label for, or any false identification of, any fish, wildlife, or plant which has been, or is intended to be imported, exported, transported, sold, purchased, or received from any foreign country.

5

15.     The Lacey Act, 16 U.S.C. § 3372(d)(2), provides that it is unlawful for any person to make or submit any false record, account, or label for, or any false identification of, any fish, wildlife, or plant which has been, or is intended to be transported in interstate or foreign commerce.

16.     50 CFR § 14.61 requires importers or their agents to file with the USFWS a completed Declaration for Importation or Exportation of Fish or Wildlife (Form 3-177), signed by the importer or the importer's agent, upon the importation of any wildlife at the place where USFWS clearance under §14.52 is requested. Importers or their agents must furnish all applicable information requested on the Form 3-177 and the importer, or the importer's agent, must certify that the information furnished is true and complete to the best of his/her knowledge and belief.

17.     50 CFR § 14.52(a) sets forth that a USFWS officer must clear all wildlife imported into the United States prior to release from detention by Customs officers.  Such clearance does not constitute a certification of legality of an importation or exportation under the laws or regulations of the United States.

18.     50 CFR §14.52(c) requires that to obtain clearance, the importer, exporter, or the importer's or exporter's agent will make the following available to a USFWS officer:

    a.  All shipping documents (including bills of lading, waybills and packing lists or invoices);

    b.  All permits, licenses or other documents required by the laws or regulations of the United States;

    c.  All permits or other documents required by the laws or regulations of any foreign country;

    d.  The wildlife being imported or exported; and

6

e. Any documents and permits required by the country of export or re-export for the wildlife.

19. 50 CFR § 14.91(b) sets forth that if you engage in the business of importing or exporting wildlife (including fish) for commercial purposes, you must obtain an import/export license prior to importing or exporting your wildlife shipment.

20. Through my training, experience, and information provided to me by USFWS biologists I know that snakeheads (family Channidae) are airbreathing freshwater fishes containing two genera: (i) *Channa* with 26 species native to Asia, Malaysia, and Indonesia; and (ii) *Parachanna* with three species native to tropical Africa. Snakeheads used in the aquarium fish trade include a few small species and brightly colored juveniles of larger snakeheads (such as the Giant Snakehead). Hobbyists and importers can purchase snakeheads through a variety of sites on the internet. The juvenile larger snakeheads eventually become incompatible with other fishes, outgrow their aquarium, and are often released. The predatory nature of snakeheads means their introduction to a water body could negatively impact populations of native fishes through direct predation, competition for food resources, and alteration of food webs. The economic impact to the commercial or recreational fishing industry could be detrimental over time.

21. The Endangered Species Act, 16 U.S.C. § 1538(a)(1)(F), makes it unlawful for any person to sell or offer for sale in interstate or foreign commerce any listed endangered species of fish or wildlife.

a. 50 CFR §17.11 contains the list of endangered and threatened wildlife under the Endangered Species Act. The Asian Bonytongue (*Scleropages formosus*), also known as the Asian Arowana, is listed as endangered wherever it is found.

7

## BACKGROUND OF INVESTIGATION

22.      On or about March 18, 2021, I received information from a Cooperating Private Individual (CPI) that JOHNNY VANG dba VANG AQUATIC LIFE LLC, a tropical fish importer and wholesaler located in Milwaukee, Wisconsin, was importing juvenile Giant snakeheads (*Channa micropeltes*) from Thailand and selling them online.  The CPI stated VANG refers to the snakeheads as "Giant Bettas" and that VANG conducts business through Facebook Messenger and that payments were made through PayPal.

23.      On March 19, 2021, I queried VANG and his business, VANG AQUATIC LIFE LLC, in the USFWS Law Enforcement Management and Information System (LEMIS) database. VANG was issued a USFWS import/export license (License #A17602) on April 30, 2020.  The license was valid through March 31, 2021.  The address listed on VANG's USFWS import/export license was 8626 W Lawrence Avenue, Milwaukee, Wisconsin 53225.  VANG's import/export license application indicated VANG was importing live fish for breeding and maintained business records concerning his imports/exports of wildlife at 3730 W National Avenue, Milwaukee, Wisconsin 53215.  VANG's cellular telephone number, (414) 439-7856, was listed on the application.

24.      On March 19, 2021, I reviewed VANG's USFWS Declaration for Importation or Exportation of Fish or Wildlife (Form 3-177) records in LEMIS.  VANG imported 12 live tropical fish shipments into the United States from May 27, 2020 through March 6, 2021.  CGS INTERFARM THAILAND CO LTD in Bangkok, Thailand was listed as the foreign exporter on 11 of VANG's imports.  CV LINTAS BENUA JAYA SAMDUDERA in Jakarta, Indonesia was listed as the foreign exporter on one of VANG's imports.  All 12 of VANG's shipments were imported into the United States through the Port of Chicago, Illinois [O'Hare International

8

Airport]. According to the fish and wildlife import documents, these shipments had 400 – 4,100 live tropical fish declared per shipment. Betta fish species were declared on all 12 import shipments. Snakeheads were not declared on any of the import shipments.

25. On March 19, 2021, I searched the Wisconsin Department of Financial Institutions corporate records database and found VANG AQUATIC LIFE LLC registered as a business on March 9, 2020. The registered agent was VANG and the principal office address for VANG AQUATIC LIFE LLC was 3730 W National Avenue, Milwaukee, Wisconsin 53215.

**PROBABLE CAUSE**

26. On March 26, 2021, I served a subpoena on Apple for records associated with telephone number (414) 439-7856 for the time-period January 1, 2020 through March 24, 2021. The Apple records showed an iCloud account (DSID: 8213425463) associated with the telephone number (414) 439-7856. The subscriber listed on the account was "Johnny Vang" with an email address of cheleng1996@icloud.com. The Apple records also showed four devices registered to the account: an iPhone 8, iPhone 11, iPad, and an Apple Watch.

27. On June 22, 2021, I executed a federal search warrant on two of VANG's Facebook accounts, "Johnny Vang Aquatic" (https://www.facebook.com/johnny.vangaquatic.3 further described and identified as Facebook ID #100039421002370) and "Vang Aquatic Life LLC" (https://www.facebook.com/vangaquaticlifellc further described and identified as Facebook ID #100987261491416). I reviewed the records provided by Facebook and found that the subscriber information for each account listed VANG's cellular telephone number of (414) 439-7856, an email address of johnnyvang1996@gmail.com, and showed an account creation date of July 17, 2019. The subscriber information for the "Johnny Vang Aquatic" Facebook account listed an

9

iPhone 12 as the account holder's device and showed that the mobile device listed on the account was last updated on June 30, 2021.

28.     During my review of the records provided by Facebook, I located several Facebook messages threads on VANG's Facebook account, "Johnny Vang Aquatic", where VANG discussed the acquisition, sale, purchase, and shipping of juvenile Giant snakeheads and other fish with various customers located throughout the United States.  In several of the message threads, VANG sent photographs and videos of what I believed to be, based on my training, experience, and information reviewed in this case, live juvenile Giant snakeheads.  VANG also sent photographs of shipping labels to his customers that displayed tracking numbers for packages that I believe based on my training, experience, and information reviewed in this case, contained live juvenile Giant snakeheads.

29.     Based on my training, experience, and the information I have reviewed in this case I believe that VANG and his customers use the following terms when referring to juvenile Giant snakeheads; "pikes", "red pikes", "giant pikes", "channa", "micro", "red", "redline", "SH".

30.     Below I have summarized some of VANG's Facebook message threads in which VANG and his customers discuss the acquisition, sale, purchase, and shipment of juvenile Giant snakeheads.

**<u>Summary of VANG and Bryan DANDO Facebook Messages</u>**

31.     On December 20, 2020, at approximately 4:19 p.m., DANDO messaged "Johnny Vang Aquatic" [hereinafter referred to as VANG], "Let me know if you get a different kind of sh bro."

32.     On December 21, 2020, at approximately 12:23 p.m., DANDO sent VANG the photograph shown below.  VANG replied that he had a lot left.

10



33.     On December 22, 2020, at approximately 11:11 a.m., DANDO asked VANG, "What you feeding the redline bro.  Other one died too.  Think I'll stop giving them feeders when I get another."  VANG replied saying feeders were bad because the fish choke on them.  VANG sent DANDO the photograph shown below.



34.     On December 24, 2020, at approximately 2:58 p.m., DANDO asked VANG how much one "redline" with shipping would be.  On December 26, 2020, VANG replied that he could do one for $50.00 and that he still had a lot of them.

35.     On December 27, 2020, at approximately 8:36 p.m., VANG messaged DANDO that shipping was $66.00 for overnight or $37.00 for two day.  DANDO replied, "I'll take 2 bro. People be buying shit load to flip em."  DANDO also told VANG to send the fish overnight shipping.

36.     On December 28, 2020, at approximately 6:11 p.m., VANG sent a photograph of a UPS Next Day Air Saver shipping label with tracking number 1Z7Y710F1397041143 to DANDO (see photograph below).  The shipping address on the label was "BRYAN DANDO 3114 PATTI LANE LANCASTER CA 93535".  The return address on the label was "JOHNNY 4144397856 VANG AQUATIC LIFE 3730 W NATIONAL AVE MILWAUKEE WI 53215"



a. I reviewed VANG's UPS shipping records and found the package bearing UPS tracking number 1Z7Y710F1397041143 (pictured above) was delivered to 3114 Patti Lane, Lancaster, CA 93535 on December 29, 2020 at approximately 3:13 p.m.

37. On December 29, 2020, at approximately 5:22 p.m., DANDO messaged VANG that both fish [snakeheads] were dead. VANG replied that he would ship more for free on Monday.

38. On January 1, 2021, at approximately 7:54 p.m., VANG messaged DANDO that he needed to check stock first and that he would be getting more soon. VANG said, "Getting maybe 1K or so". DANDO replied, "Sheeshh that's a lot. Get some few inches bigger thats not red anymore lol. The ones I see to see before just had the line across". On January 1, 2021, from approximately 8:04 p.m. – 8:05 p.m., VANG replied, "Bigger" "The bigger the risk" "Small size" "They look like wild bettas" "Can pass lol" "Bigger" "Can't pass as bettas lol".

13

39.     On January 4, 2021, at approximately 12:32 p.m., VANG messaged DANDO, "I get more next week".

40.     On January 8, 2021, at approximately 4:13 p.m., DANDO asked VANG when he was supposed to pick up the new batch.  VANG replied, "Thursday".

41.     On January 12, 2021, at approximately 8:20 p.m., DANDO messaged VANG, "How much you selling the redlines bro".  VANG replied, "50 each for you" "But I'm sending 4 for you already".  DANDO replied, "Yessir I might add more though since its air cargo anyway".

42.     On January 12, 2021, at approximately 8:22 p.m., DANDO asked VANG what else he was getting tomorrow besides the rays.  VANG replied, "Rays ntt datnoids" "Silver aros" "Tbh forgot what else I ordered lmao".  VANG also told DANDO, "My thailand partner just says do you want this and that" "I just say yeah throw it in hha".

43.     On January 12, 2021, at approximately 8:28 p.m., VANG said [in reference to his Thailand partner], "He just call me and tell me haha" "Then I just tell him what to add".

44.     On January 14, 2021, at approximately 3:29 p.m., DANDO messaged VANG, "Ah ok.  I'll send you the payment for the redline in a bit".  VANG replied, "U wanna add 1" and "So 5 total?".  DANDO replied, "Yeah I do brody".

45.     On January 18, 2021, at approximately 7:55 a.m., VANG messaged DANDO, "Think we ship ups bro".

46.     On January 18, 2021, at approximately 4:41 p.m., VANG sent DANDO the photograph shown below.

14



47.     On January 18, 2021, at approximately 5:13 p.m., VANG asked DANDO for his shipping information.  DANDO replied, "3114 patti lane Lancaster ca 93535".  VANG replied that the shipping was $60.

48.     On January 18, 2021, at approximately 6:40 p.m., VANG sent DANDO a photograph of a UPS Next Day Air Saver shipping label showing tracking number 1Z7Y710F1396169197 (see photograph below).  The shipping address on the label was "BRYAN DANDO 3114 PATTI LANE LANCASTER CA 93535".  The return address on the label was "JOHNNY 4144397856 VANG AQUATIC LIFE 3730 W NATIONAL AVE MILWAUKEE WI 53215".

15



a. I reviewed VANG's UPS shipping records and found the package bearing UPS tracking number 1Z7Y710F1396169197 (pictured above) was delivered to 3114 Patti Lane, Lancaster, CA 93535 on January 19, 2021 at approximately 2:02 p.m.

49.    On January 20, 2021, at approximately 12:33 p.m., DANDO messaged VANG, "You got anymore redlines bro?  Another one drowned.  Nahh lol think it was sick cause it was the one that was separated from the 3."  VANG replied, "Yeap a lot".

50.    On January 25, 2021, at approximately 1:12 p.m., DANDO messaged VANG, "Still shipping them out today brody?"  VANG asked DANDO if he wanted "4 sh" and said shipping was $60.  DANDO replied that he would send the money.

16

51. On February 21, 2021, at approximately 12:50 p.m., DANDO messaged VANG, "You not getting anymore redline". VANG replied, "Shit iono" "These mfs big now tho" and sent DANDO the photograph show below.



52. On February 21, 2021, at approximately 12:57 p.m., DANDO asked VANG what other new fish he had. VANG replied with the photograph shown below. Based on my training and experience I believe the photograph was a screenshot of the Notes application from a mobile device.



53.     On February 22, 2021, at approximately 10:03 a.m., VANG sent DANDO the photograph shown below.  At approximately 10:24 a.m., VANG messaged DANDO, "Your red pikes lol".



54.     On February 22, 2021, at approximately 3:22 p.m., VANG sent two photographs to DANDO (see photographs below).  The shipping address on the label said "6614064084 BRYAN DANDO 3114 PATTI LANE LANCASTER CA 93535".  The return address on the label said "JOHNNY 4144397856 VANG AQUATIC LIFE 3730 W NATIONAL AVE MILWAUKEE WI 53215"

19





20

a.  I reviewed VANG's UPS shipping records and found that UPS package bearing tracking number 1Z7Y710F0199086436 (pictured above) was delivered to 3114 Patti Lane, Lancaster, CA 93535 on February 23, 2021 at approximately 10:04 a.m.

**Summary of VANG and Anthony MORRIS Facebook Messages**

55.     On January 11, 2021, at approximately 12:00 p.m., "Johnny Vang Aquatic" [hereinafter referred to as VANG] sent MORRIS the photograph shown below.  VANG said, "I can get these lol" "Lmk if you want some" "Getting 100pc" "80 each is preorder price".



56.     On January 11, 2021, at approximately 1:14 p.m., MORRIS asked what size the snakehead looking fish would come in as.  VANG said two inches.

57.     On January 12, 2021, at approximately 8:04 p.m., MORRIS asked VANG what kind of snakehead it was.  At approximately 8:11 p.m., VANG replied, "Giant snakehead".

58.     On January 12, 2021, at approximately 8:41 p.m., MORRIS messaged VANG, "You can get snake heads I thought they where Illegal in US".  VANG replied, "They are lol" "I know ppl" "Just because you can't smoke weed doesnt mean you can't" "Same concept". MORRIS said he would be interested in one or two of the snakeheads.

59.     On January 14, 2021, at approximately 10:59 a.m., VANG sent MORRIS the photograph shown below and said "6 rays 1 albino aro".  VANG asked MORRIS if he wanted a "giant sh" for $80 each.



60.     On January 14, 2021, at approximately 11:05 a.m., VANG called MORRIS through Facebook Messenger.

61.     On January 14, 2021, at approximately 1:25 p.m., VANG sent MORRIS a photograph of a Southwest Airlines airway bill #526-56299692 (see photograph below).  The consignee listed on the airway bill was "ANTHONY MORRIS 205 MARSHAL ST JACKSON, MI 49202 US +1 (517) 581-3734".  The shipper listed on the airway bill was "VANG AQUATIC LIFE LLC 3730 W NATIONAL AVE MILWAUKEE, WI 53215 US +1 (414) 439-7856".



a.  I reviewed VANG's Southwest Airlines shipping records for airway bill #526-
56299692 (shown above).  The records showed that VANG shipped live tropical
fish from the General Mitchell International Airport in Milwaukee, Wisconsin to
the Detroit Metropolitan Wayne County Airport (DTW) in Detroit, Michigan.  The
shipment was picked up at DTW on January 14, 2021, at 7:45 p.m., and signed for
by "MORRIS".

62.    On January 14, 2021, at approximately 9:56 p.m., MORRIS asked VANG, "What
where they feeding on for you?  I'm going to put some blood warms in there once I get these rays
settled in."  VANG asked which fish MORRIS was referring to.  MORRIS replied, "Snake and
arowana".  VANG replied tilapia.

23

63.     On January 17, 2021, at approximately 9:46 p.m., VANG messaged MORRIS, "U still got that sh". MORRIS replied that the snakehead was doing good and eating blood worms. VANG replied, "U never got it from me ok lol" "I don't like to be known for those lol".

### Summary of VANG and Chris KAM Facebook Messages

64.     On December 19, 2020, at approximately 9:29 p.m., "Johnny Vang Aquatic" [hereinafter referred to as VANG] messaged KAM asking if he could call. KAM said yes.

65.     On December 19, 2020, at approximately 9:34 p.m., VANG called KAM through Facebook Messenger.

66.     On December 19, 2020, at approximately 9:37 p.m., VANG messaged KAM that he had a guy who made thick Styrofoam boxes with a slit to a storage area. KAM replied, "Interesting" and "Never seen those before so it can slip In legal". VANG replied that the storage area was "Good for 2-3" fishes".

67.     On January 7, 2021, at approximately 10:13 p.m., VANG messaged KAM "U want some sh". VANG said he was sold out but was getting new one's next week and that the pre-order price was $50 each. VANG also said, "Can ship ups or usps". KAM replied that he could sell some of those [snakeheads] and that he would take ten for now. Later the same day, KAM told VANG to let him know when the snakeheads came in and asked if VANG was getting any other "channa". VANG replied "No" and "We call em "pikes"". VANG told KAM he was only getting the "giant pikes".

68.     On January 7, 2021, at approximately 11:26 p.m., VANG messaged KAM, "Arrives next week wed all fish" and indicated the shipment would have over 60 rays.

24

69. On January 7, 2021, at approximately 11:31 p.m., VANG messaged KAM, "Just delete the video after you see it Ahhaha u can save it if you want lol". KAM replied, "No worry looks like it's in Asia 😁". VANG replied, "Red pikes at my partners Thailand facility".

70. On January 7, 2021, at approximately 11:39 p.m., VANG messaged KAM, "U still want 10 red pike too". KAM replied that he wanted five. VANG told KAM that all "red pikes" and rays are bagged individually.

71. On January 8, 2021, at approximately 4:42 p.m., KAM messaged VANG that he wanted "5 micro 6 rays". VANG replied that the total for the shipment was $1,250.00. VANG provided KAM with his email address for PayPal, cheleng1996@hotmail.com.

72. On January 8, 2021, at approximately 4:51 p.m., KAM messaged VANG that he sent the money and asked VANG when he was going to get the shipment in. VANG replied Wednesday.

73. On January 14, 2021, at approximately 11:39 a.m., VANG messaged KAM, "Got em" and "All good". Later the same day, VANG sent KAM a video of the rays KAM purchased.

74. On January 16, 2021, at approximately 8:27 p.m., VANG sent KAM another video of KAM's rays. At approximately 8:36 p.m., VANG said, "And got the SH" and told KAM that if he wanted to add more for the same price to let him know.

75. On January 19, 2021, at approximately 11:24 a.m., VANG messaged KAM that he would be shipping the fish out later that day and asked KAM for his name and address for shipping. KAM replied, "C Wong267 A Mokauea st. Honolulu, HI 96819". KAM told VANG to not put any fish markings on the box. VANG told KAM he would be packing the "6 rays and 6 sh" for shipment around 3:00 p.m. VANG also said he gave KAM an extra snakehead.

76. On January 19, 2021, at approximately 3:08 p.m., VANG sent a video of the shipment to KAM (see screenshot of the video below).



VANG asked if KAM wanted anything else before he closed the box. KAM asked what else VANG had. VANG sent KAM a photograph showing the list of the fish he had in inventory with corresponding prices (see photograph below). Based on my training and experience I believe the photograph shown below was a screenshot of the Notes application on a mobile device.

26



VANG told KAM he was going to throw in two bettas for free. KAM said he wanted six of the tiger shovelnose catfish too. VANG said the six catfish were $130 plus $265.00 for shipping and asked KAM to send him the $395.00 through PayPal.

77.     On January 19, 2021 at approximately 3:37 p.m., VANG sent KAM a photograph of a United States Postal Service (USPS) Priority Mail Express 2-Day shipping label and said, "Ryan smith sending u 🐟". The tracking number on the parcel was 9481703699300039203307. The parcel was addressed to "C WONG 267A MOKAUEA ST HONOLULU HI 96819-3144".

27

The return address was "RYAN SMITH 3730 W NATIONAL AVE MILWAUKEE WI 53215-1008" (see photograph below).



a. USPS records showed the package was shipped Priority Mail Express 2-Day on January 19, 2021 from zip code 53215 (Milwaukee County, WI). USPS records showed the package was delivered on January 23, 2021, at approximately 9:08 a.m.

b. USPS records showed VANG had a USPS Click-N-Ship account, account #163720177. The address listed on VANG's USPS Click-N-Ship account customer profile was 8626 W Lawrence Avenue, Milwaukee, Wisconsin. The email address listed on VANG's USPS Click-N-Ship customer profile was cheleng1996@hotmail.com. The telephone number listed on VANG's USPS Click-N-Ship customer profile was (414) 439-7856.

78.     On January 19, 2021, at approximately 3:44 p.m., VANG sent a photograph to KAM and said, "6 sh, 6 ray, 6 tsn, 2 betta" (see photograph below).  KAM replied, "Looks good".



79.     On January 23, 2021 at approximately 1:27 p.m., KAM messaged VANG that he received the package.  KAM said one "sh" and all the rays and catfish were dead, but all the bettas made it.

80.     On January 24, 2021 at approximately 1:32 p.m., KAM asked VANG, "What are the SH eating".  VANG replied tilapia, shrimp, bloodworms, pellets.  VANG sent KAM two videos of what I believed to be, based on my training, experience, and information reviewed in this case, juvenile Giant snakeheads (See screenshots of the videos below).

29





81.     On March 9, 2021 at approximately 10:08 p.m., VANG messaged KAM, "Getting huge" and sent a video to KAM showing what I believed to be, based on my training and experience, and information reviewed in this case, juvenile Giant snakeheads (See screenshot of the video below).



82. On March 9, 2021, at approximately 11:15 p.m., KAM messaged VANG, "You still got some left?" VANG replied the next morning, "YeP. Couple".

83. On March 10, 2021, at approximately 1:23 p.m., KAM asked, "How big how much?". VANG replied that the fish were 4-6 inches and $200 each.

### Summary of VANG and David CAO Facebook Messages

84. On February 17, 2021, at approximately 9:31 a.m., CAO messaged "Johnny VANG Aquatic" [hereinafter referred to as VANG] asking if VANG still had any "giant sh". VANG replied yes and that he wanted $150 each now because the fish were bigger. CAO replied, "damn I was gonna ask if u can do 3 for 300". VANG replied, "Yeah"

85. On February 17, 2021, at approximately 9:45 a.m., VANG asked CAO, "So You want 3 sh". CAO said he needed to think about it and asked to see a video. At approximately 10:11 a.m., VANG sent CAO a video showing what I believed to be, based on my training and experience, and information reviewed in this case, juvenile Giant snakeheads (see screenshot of the video below).

31



86.     On March 12, 2021, at approximately 1:13 p.m., CAO messaged VANG, "bro u still selling the giant sh 3 for $300?".  VANG said no and that the snakeheads were now $200 each and that he sold 10 for 300 each.  CAO said he had a friend that wanted to buy some and asked if he could share VANG's contact information with his friend.  VANG said, "No" "I don't trust".

87.     On March 12, 2021, at approximately 1:18 p.m., VANG sent CAO a video showing what I believed to be, based on my training, experience, and information I have reviewed in this case, juvenile Giant snakeheads (see screenshot of video below).  At approximately 1:29 p.m., VANG messaged CAO that he could do two snakeheads for $300 for CAO's friend.   CAO said he told his friend that he would have to pickup the fish at cargo and his friend said no.  VANG replied, "Done it many times" "It's fine" "Once in USA they don't care" "Only international you gotta be worried".



88.     On March 15, 2021, at approximately 2:27 p.m., CAO messaged VANG, "bro now my friend want two giants".  VANG told CAO it was still "2 for 300".  CAO said his friends address was "137 Main Street Garfield New Jersey 07026".  VANG told CAO that shipping was $65.00 and the total was $365.00.  VANG told CAO the money needed to be sent via PayPal to vangaquaticlifellc@gmail.com.  VANG asked who CAO's friend was.  CAO replied, "ihor" and said that he trusts him.

89.     On March 16, 2021, at approximately 8:30 a.m., VANG asked if CAO's friend was sending the money.  At approximately 8:45 a.m., CAO sent a photograph showing $365.00 was sent to VANG (see photograph below).

33

You sent $365.00 to Johnny Vang

We'll let Johnny know you sent it.

Tell us how this transaction went

Done

Send More



90.     On March 16, 2021, at approximately 8:48 a.m., CAO told VANG to send the shipment to "Ihor Mashtalir 137 Main Street Garfield New Jersey 07026". At approximately 10:13 a.m., VANG sent a photograph to CAO (see photograph below).



34

91.     On March 16, 2021, at approximately 12:52 p.m., VANG sent CAO a photograph of a UPS Next Day Air Saver shipping label with tracking number 1Z7Y710F1397748658 (see photograph below).  The package was addressed to "IHOR MASHTALIR 137 MAIN STREET GARFIELD NJ 07026".  The return address on the package was "JOHNNY 4144397856 VANG AQUATIC LIFE 3730 W NATIONAL AVE MILWAUKEE WI 53215".



92.     On March 17, 2021, at approximately 10:32 a.m., CAO messaged VANG, "he got the giants bro" and "he went to ups to picked it up".

## Summary of VANG and Devante BERRY Facebook Messages

93. On March 14, 2021, at approximately 7:19 p.m., "Johnny Vang Aquatic" [hereinafter referred to as VANG] messaged BERRY, "U still want some sh". VANG also said, "I think like 8 left" and sent BERRY two videos showing what I believed to be based on my training, experience, and information reviewed in this case, juvenile Giant snakeheads (see screenshot of videos below). BERRY replied that he may take some. VANG told BERRY to let him know if he was interested.





94.     On March 14, 2021, at approximately 10:46 p.m., BERRY messaged VANG, "Im thinking five but trying to sell a few to make it all worth it.  What deal could you give me on all 8?"  VANG replied, "1K".  BERRY said he thought he could do that price.

95.     On March 18, 2021, at approximately 2:58 a.m., BERRY messaged VANG, "Hey bro you up".  VANG asked BERRY if he wanted some "sh".  BERRY replied, "Man I'm so scared lol" "But I'll take em".  BERRY told VANG that he was scared of getting caught red handed with the snakeheads in Texas.

96.     On March 18, 2021, at approximately 3:05 a.m., VANG told BERRY to send the money and he would ship with BERRY's datnoids.  VANG provided BERRY with his email address for PayPal, vangaquaticlifellc@gmail.com, and told BERRY "No notes".

97.     On March 18, 2021, at approximately 3:10 a.m., BERRY sent a photograph to VANG showing BERRY sent $1,000.00 to VANG (see photograph below).



98.     On March 18, 2021, at approximately 3:13 a.m., VANG asked BERRY if his address, telephone number, and name was the same for the cargo shipment.  BERRY replied, "132 Jasper TrailBuda, TX 786105129051046".

99.     On March 18, 2021, at approximately 4:43 a.m., VANG messaged BERRY, "Sh we good" and sent the photograph shown below.



100.     On March 18, 2021, at approximately 5:02 a.m., VANG sent BERRY the photograph shown below and said, "8sh 5ntt".



101.    On March 18, 2021, at approximately 5:18 a.m., VANG messaged BERRY that he was going to the airport now.  At approximately 5:46 a.m., VANG sent BERRY a photograph of a Southwest Airlines airway bill #526-58311433 (see photograph below).  The consignee listed on airway bill was "DEVANTE BERRY 132 JASPER TR BUDA, TX 78610 US +1(512) 905-1046".  The shipper listed on the airway bill was "VANG AQUATIC LIFE LLC 3730 W NATIONAL AVE MILWAUKEE, WI 53215 US +1(414) 439-7856".

39



a. I reviewed VANG's Southwest Airlines shipping records for airway bill #526-58311433. The records showed that on March 18, 2021 at 5:44 a.m., VANG shipped live tropical fish from the General Mitchell International Airport in Milwaukee, Wisconsin to the Austin-Bergstrom International Airport (AUS) in Austin, Texas. The shipment was picked up at AUS on March 18, 2021 at 2:53 p.m. and signed for by "DEVANTE" [BERRY].

102.    On March 18, 2021, at approximately 5:44 p.m., BERRY messaged VANG, "Got it".

103.    On April 15, 2021, at approximately 4:05 p.m., BERRY asked VANG if he got his hands on anymore "channa". VANG said, "Nope". BERRY replied, "Cool just lmk if anything new comes around".

40

104.    On March 26, 2021, I served a subpoena on PayPal for records associated with VANG's PayPal accounts under the email addresses cheleng1996@hotmail.com and vangaquaticlifellc@gmail.com.  PayPal records for the email address cheleng1996@hotmail.com listed the registered user as "Johnny Vang" with a date of birth of 11/16/1996 and a social security number of 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.  The cellular telephone number listed on the account was (414) 439-7856.  PayPal records for the email address vangaquaticlifellc@gmail.com also listed the registered user as "Johnny Vang" with a date of birth of 11/16/1996 and a social security number of 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.  The cellular telephone number listed on the account was (414) 439-7856.

105.    On October 29, 2021, I served a subpoena on FedEx Express for records associated with VANG or VANG AQUATIC LIFE LLC for the time period December 1, 2020 through October 27, 2021.  FedEx records showed an account under VANG AQUATIC LIFE LLC that was created on June 9, 2020.  The primary shipper contact information listed on the account was VANG with a telephone number of (414) 439-7856.

106.    On October 29, 2021, I served a subpoena on Southwest Airlines for records associated with VANG or VANG AQUATIC LIFE LLC for the time period December 1, 2020 through October 27, 2021.  Southwest records showed an account under VANG AQUATIC LIFE LLC that was created on June 8, 2020.  The commodity listed in the account information was "freshwater fish" and the contact information listed VANG and a telephone number of (414) 439-7856.

107.    On January 18, 2023, I searched the Wisconsin Department of Financial Institutions corporate records database and found VANG AQUATIC LIFE LLC registered as a business on March 9, 2020.  The registered agent listed was VANG with a registered agent office address of

4837 N 124th St., Butler, Wisconsin 53007.  The principal office address listed on the records for

VANG AQUATIC LIFE LLC was 3730 W National Avenue, Milwaukee, Wisconsin 53215.

 a. Based on investigative activity in this case, I know that VANG currently owns and operates a storefront called VANG AQUATIC LIFE LLC at 4837 N 124th St., Butler, Wisconsin.  At this location, VANG sells live tropical fish.  According to the VANG AQUATIC LIFE LLC Facebook page the business is open Tuesday - Friday from 12:00 p.m. to 6:00 p.m. and Saturday – Sunday from 12:00 p.m. to 5:00 p.m.

 b. VANG previously operated VANG AQUATIC LIFE LLC at 3730 W National Ave., Milwaukee, Wisconsin 53215.  However, there was no storefront located at this address.

108. On February 8, 2023, agents from the USFWS and United States Department of Homeland Security Investigations executed a federal search warrant on VANG's person and seized DEVICE A pursuant to the search warrant.

109. On February 8, 2023, USFWS Resident Agent in Charge Darin Brandenburg and I interviewed VANG at VANG AQUATIC LIFE LLC in Butler, Wisconsin.  VANG provided the following information about juvenile Giant snakeheads, Asian arowanas, and his Apple iPhone cellular telephone during the interview:

 a. VANG admitted to smuggling approximately 100 juvenile Giant snakeheads into the United States through the Port of Chicago, Illinois (O'Hare International Airport) on December 15, 2020.  VANG said the snakeheads came from CGS INTERFARM in Bangkok, Thailand and that he purchased the juvenile giant snakeheads from CGS INTERFARM for about $5 per fish. VANG said the

42

snakeheads were mixed in with the other live tropical fish he imported from CGS INTERFARM on December 15, 2020 and that the snakeheads were declared as bettas on the USFWS import documents. VANG said the snakeheads were packaged inside black bags in the fish shipment and that he transported the snakeheads and other fish that he imported on December 15, 2020 from O'Hare International Airport to 3730 W National Avenue, Milwaukee, Wisconsin [previous location of VANG AQUATIC LIFE LLC].

b. VANG sold the juvenile Giant snakeheads he smuggled into the United States for at least $50 per fish to various customers located throughout the United States. VANG shipped many of the snakeheads to his customers but also sold some locally.

c. Approximately six months ago, VANG helped Ben MAI in Ohio sell a Super Red Asian arowana [federally endangered species] for $3,000 to a person in California with the last name of Xiong. VANG said he got $500 for connecting the buyer and seller. VANG received the $500 via PayPal.

d. VANG has had the Apple iPhone the agents seized for approximately two years.

e. VANG primarily uses Facebook Messenger to communicate with his customers about fish. VANG said text messaging was for personal use.

f. VANG uses the Facebook Messenger application on his cellular telephone to communicate with his customers about fish.

g. VANG's primary electronic device is his cellular telephone.

**TECHNICAL TERMS**

110.    Based on my training and experience, I use the following technical terms to convey the following meanings:

43

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

45

e.  PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections

46

between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

111.   Based on my training, experience, and research, I know that DEVICE A has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## PLACE TO BE SEARCHED AND THINGS TO BE SEIZED

112.   Based on my experience and training, as well as the collective knowledge and experience of other USFWS agents I am aware that it is a common practice for individuals involved in the trafficking of fish or wildlife to generate, keep, maintain and use records (including paper documents and electronic files) of their trafficking activities, whether legal or illegal, including but not limited to messages, notes, calendars, letters, maps, list of contacts, contracts, diaries, receipts, travel records, reservations documents, hotel/motel bills, invoices, brochures, cancelled checks, credit card statements, bank statements, telephone records, photographs, videos and shipping labels detailing the ordering, payment for, receipt, storage, acquisition and disposition of such wildlife.

## USE OF MOBILE DEVICES

113.   In this case and others, Agents have documented subjects' use of mobile devices to facilitate their unlawful activities. Examples of activities directly tied to the use of mobile devices include but are not limited to: photography and/or video of specimens being smuggled, sold, purchased, or shipped; photography of shipping labels; private messaging via Facebook Messenger, WeChat and WhatsApp; applications designed to monitor (or "track") packages to

their delivery destination; mapping capabilities to locate shipping locations such as post offices; and standard telephone-talk phone calls. Wildlife smugglers often use the advanced capabilities of mobile devices to facilitate their smuggling activities; because of communication and logistical needs, smugglers regularly carry their mobile devices on their person, at their residences, or place of business.

114.     Many of the messaging options as well as the camera on mobile devices require the user to physically delete items from the device. With the advent of more efficient storage within these devices, Agents often find a significant amount of data stored on the device itself. Records including photographs of packages and contents, tracking data, payment information and messages coordinating shipments are all encountered on smartphones.

## **ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

115.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

116.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them, and when.  There is probable cause to believe that this forensic electronic evidence might be on the device because:

> a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

117. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

49

118.    *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

### CONCLUSION

119.    I submit that this affidavit supports probable cause for a search warrant authorizing the examination of DEVICE A described in Attachment A to seek the items described in Attachment B.

120.    It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant.  I believe that sealing these documents is necessary because the items and information to be seized are relevant to an ongoing investigation into a criminal organization, and not all of the targets of this investigation will be searched at this time.  Based upon my training and experience, I have learned that criminals actively search for criminal affidavits and search warrants via the internet and disseminate them to other criminals as they deem appropriate, e.g., by posting them publicly through online forums.  Therefore, premature disclosure of the contents of this affidavit and related documents will seriously jeopardize the investigation, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, and notify confederates.

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

The property to be searched is Johnny VANG's cellular telephone, an Apple iPhone assigned call number (414) 439-7856. VANG's iPhone assigned call number (414) 439-7856 is currently in the possession of the United States Department of Homeland Security Investigations in the Eastern District of Wisconsin.

This warrant authorizes the forensic examination of VANG's iPhone for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

## ITEMS TO BE SEIZED

1.      All records on DEVICE A that constitute fruits, evidence, and instrumentalities of violations of 18 U.S.C. § 545 (Smuggling), 18 U.S.C. § 371 (Conspiracy), 18 U.S.C. § 42(a)(1) (Lacey Act – Injurious Species), 16 U.S.C. § 3372(a)(1) (Lacey Act), 16 U.S.C. § 3372(a)(2)(A) (Lacey Act), 16 U.S.C. § 3372(d)(1) (Lacey Act), 16 U.S.C. § 3372(d)(2) (Lacey Act), 16 U.S.C. §1538(a)(1)(F) (Endangered Species Act), and 50 CFR § 16.13(a)(2)(iv) (Regulations for Injurious Species) involving Johnny VANG, including, but not limited to:

   a. Text messages, social media messages and content, SMS messages, chats, and iMessage data relating to the smuggling, import, export, transport, shipment, sale, receipt, acquisition, or purchase of any fish;

   b. Photos, videos, notes, memos, calendar, location history data, metadata associated with any photos, IP addresses, internet browsing history, contact information, contact lists, call logs;

   c. Photos or electronic copies of shipping documents including but not limited to labels, invoices, airway bills, tracking numbers, and photos of packages and contents relating to the crime(s) under investigation;

   d. Electronic files or documents including but not limited to; United States Customs Service documents; USFWS declarations, CITES import/export permit applications, and other items and documents relating to the smuggling, import, export, transport, shipment, sale, receipt, acquisition, or purchase of fish;

52

e.   Electronic mail to include the content of the emails, attachments, and associated email addresses relating to the smuggling, import, export, transport, shipment, sale, receipt, acquisition, or purchase of fish;

f.   All bank records, electronic money transfer records/receipts, checks, credit card bills, account information, and other financial records relating to the smuggling, import, export, transport, shipment, sale, receipt, acquisition, or purchase of fish.

g.   Any correspondence, documents, records, or memoranda relating to the crime(s) under investigation;

h.   Any information related to sources of fish (including names, addresses, telephone numbers, or any other identifying information);

i.   Evidence of making or submitting any false record, account, or label for, or any false identification of, any fish which has been or is intended to be imported, exported, transported, sold, purchased, or received from any foreign country or transported in interstate or foreign commerce;

j.   Any information related to the interception, seizure, or failed shipment of delivery of any interstate or foreign shipments involving snakeheads, Asian arowanas, or other fishes, or the customs declaration and other labeling for any such shipment, or any interest or contact with law enforcement or security personnel employed by shipping companies regarding any such packages;

k.   The identity of any sellers, buyers, or aiders and abettors of any transactions or interstate or foreign shipments involving snakeheads, Asian arowanas, or other fish.

53

l.  Evidence indicating how and when the electronic device was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime(s) under investigation;

m.  Evidence indicating the electronic device account owner's state of mind as it relates to the crime(s) under investigation;

n.  The identity of the person(s) who owned or used the electronic device, including records that help reveal the whereabouts of such person(s);

o.  The identity of the person(s) who communicated with the electronic device about matters relating to the smuggling, import, export, transport, shipment, sale, receipt, acquisition, or purchase of fish, including records that help reveal their whereabouts;

p.  Evidence of the existence, scope, or overt acts in furtherance of a conspiracy;

q.  Evidence of the methods and techniques used in committing wildlife protection offenses;

r.  Evidence of motive, intent, or knowledge of the crimes described above;

s.  Evidence of preparatory steps taken in furtherance of the crimes described above;

2.  Evidence of user attribution showing who used or owned DEVICE A at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3.  As used above, the terms "records" and "information" include all of the foregoing items of evident in whatever form and by whatever means they have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

❐ Original                                    ❐

**CLERK'S OFFICE**
**A TRUE COPY**
**Feb 14, 2023**
**s/ D. Olszewski**
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | Case No.   23   MJ   29 |
| *or identify the person by name and address)* | ) | |
| Johnny VANG's Apple iPhone assigned call number (414) | ) | **Matter No.: 2021R00114** |
| 439-7856, currently in the possession of the U.S. Dept. of | ) | |
| Homeland Security Investigations (See Attachments) | ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

   See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

   See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before      2/28/2023      *(not to exceed 14 days)*

❐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. William E. Duffin _____ .
                                                                                                  *(United States Magistrate Judge)*

❐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❐ for _____ days *(not to exceed 30)*   ❐ until, the facts justifying, the later specific date of _____ .

Date and time issued:      2/14/2023 at 9:59 AM                    *William E. Duffin*
                                                                                                  *Judge's signature*

City and state:      Milwaukee, WI                    Hon. William E. Duffin, U.S. Magistrate Judge
                                                                                        *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

The property to be searched is Johnny VANG's cellular telephone, an Apple iPhone assigned call number (414) 439-7856. VANG's iPhone assigned call number (414) 439-7856 is currently in the possession of the United States Department of Homeland Security Investigations in the Eastern District of Wisconsin.

This warrant authorizes the forensic examination of VANG's iPhone for the purpose of identifying the electronically stored information described in Attachment B.

51

**ATTACHMENT B**

**ITEMS TO BE SEIZED**

1.          All records on DEVICE A that constitute fruits, evidence, and instrumentalities of violations of 18 U.S.C. § 545 (Smuggling), 18 U.S.C. § 371 (Conspiracy), 18 U.S.C. § 42(a)(1) (Lacey Act – Injurious Species), 16 U.S.C. § 3372(a)(1) (Lacey Act), 16 U.S.C. § 3372(a)(2)(A) (Lacey Act), 16 U.S.C. § 3372(d)(1) (Lacey Act), 16 U.S.C. § 3372(d)(2) (Lacey Act), 16 U.S.C. §1538(a)(1)(F) (Endangered Species Act), and 50 CFR § 16.13(a)(2)(iv) (Regulations for Injurious Species) involving Johnny VANG, including, but not limited to:

   a.   Text messages, social media messages and content, SMS messages, chats, and iMessage data relating to the smuggling, import, export, transport, shipment, sale, receipt, acquisition, or purchase of any fish;

   b.   Photos, videos, notes, memos, calendar, location history data, metadata associated with any photos, IP addresses, internet browsing history, contact information, contact lists, call logs;

   c.   Photos or electronic copies of shipping documents including but not limited to labels, invoices, airway bills, tracking numbers, and photos of packages and contents relating to the crime(s) under investigation;

   d.   Electronic files or documents including but not limited to; United States Customs Service documents; USFWS declarations, CITES import/export permit applications, and other items and documents relating to the smuggling, import, export, transport, shipment, sale, receipt, acquisition, or purchase of fish;

52

e.   Electronic mail to include the content of the emails, attachments, and associated email addresses relating to the smuggling, import, export, transport, shipment, sale, receipt, acquisition, or purchase of fish;

f.   All bank records, electronic money transfer records/receipts, checks, credit card bills, account information, and other financial records relating to the smuggling, import, export, transport, shipment, sale, receipt, acquisition, or purchase of fish.

g.   Any correspondence, documents, records, or memoranda relating to the crime(s) under investigation;

h.   Any information related to sources of fish (including names, addresses, telephone numbers, or any other identifying information);

i.   Evidence of making or submitting any false record, account, or label for, or any false identification of, any fish which has been or is intended to be imported, exported, transported, sold, purchased, or received from any foreign country or transported in interstate or foreign commerce;

j.   Any information related to the interception, seizure, or failed shipment of delivery of any interstate or foreign shipments involving snakeheads, Asian arowanas, or other fishes, or the customs declaration and other labeling for any such shipment, or any interest or contact with law enforcement or security personnel employed by shipping companies regarding any such packages;

k.   The identity of any sellers, buyers, or aiders and abettors of any transactions or interstate or foreign shipments involving snakeheads, Asian arowanas, or other fish.

l.   Evidence indicating how and when the electronic device was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime(s) under investigation;

m.  Evidence indicating the electronic device account owner's state of mind as it relates to the crime(s) under investigation;

n.   The identity of the person(s) who owned or used the electronic device, including records that help reveal the whereabouts of such person(s);

o.   The identity of the person(s) who communicated with the electronic device about matters relating to the smuggling, import, export, transport, shipment, sale, receipt, acquisition, or purchase of fish, including records that help reveal their whereabouts;

p.   Evidence of the existence, scope, or overt acts in furtherance of a conspiracy;

q.   Evidence of the methods and techniques used in committing wildlife protection offenses;

r.   Evidence of motive, intent, or knowledge of the crimes described above;

s.   Evidence of preparatory steps taken in furtherance of the crimes described above;

2.     Evidence of user attribution showing who used or owned DEVICE A at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3.     As used above, the terms "records" and "information" include all of the foregoing items of evident in whatever form and by whatever means they have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

54